**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                               :
RONALD BROOKS,                 :
                               :
      Plaintiff,               :
                               :
      v.                       :    Civil Action No. 05-362(GK)
                               :
DISTRICT OF COLUMBIA, ET AL.,  :
                               :
      Defendants.              :
_____:
```

**MEMORANDUM OPINION**

Plaintiff, Ronald Brooks, brings this action against the District of Columbia and five individual police officers ("Officers") of the Washington Metropolitan Police Department ("MPD"), alleging violations of the United States Constitution, 42 U.S.C. § 1983 ("Section 1983"), and the common law of the District of Columbia. Specifically, he alleges intentional infliction of emotional distress, negligence, assault, and Fourth Amendment violations against the individual defendants. Against the District of Columbia, he alleges respondeat superior liability, liability under Section 1983 for violation of his Fourth Amendment rights, and respondeat superior liability pursuant to 42 U.S.C. § 1983.

This matter is currently before the Court on Defendants' Motion for Partial Summary Judgment. ("Defs.' Mot.") [Dkt. No. 37]. Upon consideration of the Motion, Opposition, and the entire

record herein,[1] and for the reasons stated below, Defendants'
Motion is hereby **granted** in part and **denied** in part.

## I. BACKGROUND

### A. Facts[2]

On the night of February 24, 2004, Defendant Officers stopped
the vehicle of Plaintiff's friend Andre Bassett on the 2500 block
of Pomoroy Road, S.E.   As they were searching Mr. Bassett's
vehicle, Plaintiff and his girlfriend, Quianna Butler, drove up to
the scene.   Ms. Butler stopped the car she was driving
approximately 15-30 feet from the Officers and Plaintiff exited the
vehicle.[3]   At this point, the parties' versions of the facts
diverge.

Plaintiff alleges that the Officers approached him, ordered
him to put up his hands, and searched him, at which point they
"savagely beat him about the body and face."   Specifically,

---

[1] No Reply was filed.

[2] Pursuant to Local Civil Rule 7.1(h), "[i]n determining a
motion for summary judgment, the Court may assume that facts
identified by the moving party in its statement of material facts
are admitted, unless such a fact is controverted in the statement
of genuine issues filed in opposition to the motion."   In this
case, the Plaintiff's Opposition disputed a number of facts
contained in Defendants' Statement of Material Facts Not in
Dispute.   All such disputed facts are identified.

[3] It is unclear whether Plaintiff knew at the time he exited
the vehicle that the Officers had stopped his friend.

Plaintiff alleges that as he exited the car, the Officers

> came towards [him] and ordered him to put his hands up.
> Mr. Brooks complied.  Mr. Brooks was ordered to lay down
> on the ground.  He again complied.  Defendant Roe placed
> his knee into Mr. Brooks' back while grabbing at his neck
> tightly and choking him....  While Defendant Roe was
> holding Mr. Brooks, one of the Defendants punched Mr.
> Brooks.  Other officers punched and kicked Mr. Brooks.
> Mr. Brooks escaped the attack and attempted to run for
> safety; however, Defendant Wright tackled Mr. Brooks.
> While on top of Mr. Brooks, Defendant Wright punched Mr.
> Brooks squarely in the eye causing serious injuries.

Pl.'s Mem. in Opp'n to Defs.' Mot. for Partial Summ. J. ("Pl.'s

Opp'n") at 2.  In his deposition, Plaintiff stated that over the

course of 20-30 minutes the Officers punched him approximately 10-

20 times in the face and kicked him in his body while he was on the

ground.  Pl.'s Opp'n Ex. 1 at 54-59.

Defendants allege that after Plaintiff exited Ms. Butler's

car, he began to walk toward the Officers with his hands in his

pockets.  Defendants claim the Officers, observing Plaintiff's pace

to be aggressive, told Plaintiff to stop several times.  When

Plaintiff failed to stop, three of the Officers approached him,

told him to get on the ground, conducted a pat down search and

checked his identification.  Two of the Officers returned to Mr.

Bassett's vehicle and Plaintiff attempted to get up.  The remaining

Officer, Defendant Roe, attempted to hold him down.  Plaintiff

pushed and struck Defendant Roe, ran down the road toward a wooded

area and fell down.  Defendant Wright tackled Plaintiff, and

Plaintiff threw two punches at him.  Defendant Wright then threw one punch, hitting Plaintiff in the eye.

It is not contested that the Officers arrested Plaintiff and took him to Washington Hospital Center.  Plaintiff alleges that Officer Wright was promoted to Lieutenant shortly after the incident.  Plaintiff claims he "suffered serious damage to his eye, had trouble getting over the incidents of that night, and has as [sic] strong fear of police officers."  Pl.'s Opp'n Ex. 2 at 5-6. He seeks compensatory, consequential and punitive damages as a result of the foregoing.

**B.   Procedural History**

Plaintiff filed his Complaint on February 23, 2005.  On December 30, 2005, Plaintiff filed an Amended Complaint.  After completion of discovery, Defendants filed the instant Motion for Summary Judgment on April 10, 2006 [Dkt. No. 37], which Plaintiff opposed on May 12, 2006.  As noted earlier, no Reply was filed.

**II.  STANDARD OF REVIEW**

Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  A fact is "material" if it might affect the outcome of the

4

action under the governing law.  Anderson v. Liberty Lobby, Inc.
477 U.S. 242 (1986).  The party seeking summary judgment bears the
initial burden of demonstrating an absence of a genuine issue of
material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In determining whether the movant has met this burden, a court
must consider all factual inferences in the light most favorable to
the non-moving party.  McKinney v. Dole, 765 F.2d 1129, 1135 (D.C.
Cir. 1985); see also Liberty Lobby, 477 U.S. at 255.  Once the
moving party makes its initial showing, however, the nonmoving
party must demonstrate "specific facts showing that there is a
genuine issue for trial."  Celotex, 477 U.S. at 324; McKinney, 765
F.2d at 1135.  Accordingly, the nonmoving party must provide
evidence that would permit a reasonable jury to find in his or her
favor.  Liberty Lobby, 477 U.S. at 255-56.  "If the evidence is
merely colorable, or is not significantly probative, summary
judgment may be granted."  Id. at 249-50 (citations omitted).

**III.  ANALYSIS**

> **A.   Summary Judgment Is Denied on the Intentional Infliction
> of Emotional Distress Claim (Count 1) Against the
> Individual Defendants Because There Are Material Facts in
> Dispute**

Defendants contend that they are entitled to summary judgment
on Plaintiff's claim of intentional infliction of emotional
distress ("IIED") in Count 1 because he "cannot establish the high

degree of extreme and outrageous conduct to sustain his burden." Defendants argue that they are entitled to summary judgment on this claim because their conduct cannot, as a matter of law, be considered outrageous. Defendants further argue that Plaintiff has not shown the requisite degree of emotional distress to sustain an IIED claim. Plaintiff responds that he has presented sufficient evidence as to each element such that a reasonable juror could find, by a preponderance of the evidence, in his favor.

Under District of Columbia law, a defendant is liable for the tort of intentional infliction of emotional distress if it engages in (1) extreme and outrageous conduct that (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress. Larijani v. Georgetown Univ., 791 A.2d 41, 44 (D.C. 2002) (citing Howard Univ. v. Best, 484 A.2d 958, 985 (D.C. 1984)). The defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Larijani, 791 A.2d at 44 (quoting Drejza v. Vaccaro, 650 A.2d 1308, 1312 n.10 (D.C. 1994)). "The question on summary judgment is whether, based on the evidence produced, a reasonable jury could find that defendant's conduct was both sufficiently outrageous to satisfy this standard, and whether that conduct was done intentionally to hurt plaintiff, or at least with

conscious disregard of his or her emotional well-being." Liser v. Smith, 254 F. Supp. 2d 89, 106 (D.D.C. 2003).  When "reasonable minds could differ on whether the conduct was extreme and outrageous," the issue of intentional infliction of emotional distress is for the jury to decide and summary judgment should not be granted.  Butera v. Dist. of Columbia, 83 F. Supp. 2d 15, 21 (D.D.C. 1999) (citing Anderson v. Prease, 445 A.2d 612, 613 (D.C. 1982)), rev'd on other grounds, 235 F.3d 637 (D.C. Cir. 2001).

In this case, there are material facts in dispute regarding the outrageousness of the Officers' alleged conduct.  Plaintiff has presented evidence that Officer Roe held him down with his knee in his back, squeezed his neck and choked him.  Plaintiff further claims that for approximately 20-30 minutes the Officers punched him in the face approximately 10-20 times and kicked him in his body while he was on the ground.  Pl.'s Opp'n Ex. 1 at 54-59.  He alleged in his Amended Complaint that he "endured severe emotional distress as a result of the [Officers'] conduct," and in his responses to interrogatories that he "had trouble getting over the incidents of that night, and has as [sic] strong fear of police officers."  Am. Compl. at ¶ 29; Pl.'s Opp'n Ex. 2 at ¶ 9.  A reasonable juror could easily find these acts--if proven--sufficiently outrageous to find for Plaintiff on Count 1.

Defendants cite to Smith v. Dist. of Columbia, 882 A.2d 778

(D.C. 2005), in support of their argument that the alleged conduct cannot, as a matter of law, be found to be outrageous.  Whatever the merits of <u>Smith</u> on its particular factual situation, the Court of Appeals was clear that the plaintiff's brief on appeal failed to address the elements of an IIED claim and did not highlight the allegedly extreme and outrageous conduct of the police officer. 882 A.2d at 794.  Given the failure of Plaintiff's counsel in <u>Smith</u> to present arguments to the District of Columbia Court of Appeals, and the long-established law in the District of Columbia, <u>Smith</u> is not persuasive authority.

Defendants further invoke <u>Dammarell v. Islamic Republic of Iran</u>, 404 F. Supp. 2d 261 (D.D.C. 2005), to support their argument that there can be no IIED where the distress is proximately caused by the assault itself.  The court in <u>Dammarell</u> stated,

> To the extent that a battery plaintiff suffered emotional distress that might be seen as caused by something other than the battery itself -- for example, the more general trauma associated with being the target of a terrorist bombing -- and assuming that such events are dissociable, D.C. law provides plaintiffs with an additional route to recovery for psychological injuries: intentional infliction of emotional distress ("IIED").

404 F. Supp. 2d at 275.  The court went on to find that the plaintiff had proved a valid claim of battery, and that she had suffered mental anguish as a result of the battery.  In a footnote, the court stated that it "does not believe a separate award for

IIED is warranted, given that Ms. Dammarell's psychological injuries can be treated as proximately caused by the battery itself." <u>Id.</u> at 276 n.5.

This case arises in a posture quite different from that of <u>Dammarell</u>. The court in <u>Dammarell</u> rendered findings of fact and conclusions of law, entered judgment for the plaintiffs, and awarded compensatory damages. <u>Id.</u> at 271. Considered in that light, it is clear that the court did not provide a separate award for IIED because it had already decided to include damages for mental anguish in the plaintiff's battery award. While the court did not expressly find for Ms. Dammarrell on her IIED claim, such a finding would have been superfluous once it determined that the award on the battery claim should include an award for her mental anguish. <u>Cf.</u> <u>Dist. of Columbia v. Minor</u>, 740 A.2d 523, 532-33 (D.C. 1999) (declining to reconsider trial court's denial of defendants' motion for judgment as a matter of law on IIED claim because "whatever damages Minor might have been awarded in connection with the [IIED] ... count would already be awarded in connection with the [false arrest, Section 1983, and assault and battery] counts.").

Given the summary judgment posture of the instant case, it is of course not known whether Plaintiff will prevail on his assault claim. It is conceivable that a jury could conclude Plaintiff has

not proven all elements of his assault claim, but has proven all elements of his IIED claim.  Under such a scenario, any recovery for mental anguish would be available only under the IIED claim.

Accordingly, the individual Defendants are not entitled to summary judgment on Plaintiff's claim of intentional infliction of emotional distress.

**B.   Summary Judgment Is Granted on the Negligence Claim (Count 2) Because Plaintiff Fails to Allege Facts Separate From His Assault Claim**

Arguing that Plaintiff cannot "couch intentional torts in terms of negligence," Defendants also move for summary judgment on Plaintiff's negligence claim.  Defs.' Mot. at 9.  Plaintiff responds that he "has clearly plead, and offered substantial evidence of, a separate negligence cause of action."  Pl.'s Mot. at 6.

It is well established that a plaintiff may sustain negligence and intentional tort claims for injuries arising out of the same event. See Etheredge v. Dist. of Columbia, 635 A.2d 908, 918 (D.C. 1993) ("The claims of negligence and assault and battery, while not identical ... are nevertheless related. The [intentional tort] question ... is whether Officer Paige initially shot Etheredge without legal justification. ... The negligence claim hinges on whether Paige ... failed to act as a reasonably prudent officer

would have acted.  Having held that the evidence was sufficient to support the assault and battery claim, we reach the same conclusion as to negligence.") (internal citations omitted).

In Etheredge, the District of Columbia Court of Appeals stated, in examining a battery claim, that "[a] police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not 'in excess of those which the actor reasonably believes to be necessary.'"  635 A.2d at 916 (internal citation omitted).  In a negligence action, by contrast, the plaintiff must prove "the applicable standard of care, a deviation from that standard of care by the defendant, and a causal relationship between that deviation and the plaintiff's injury." Id. at 917;  Reaves-Bey v. Karr, 840 A.2d 701, 704 (D.C. 2004).

The proof requirements thus differ between battery and negligence claims.  "[F]or assault and battery the inquiry is whether the officer's conduct was reasonably necessary and thereby privileged; and for negligence the inquiry is whether the officer's conduct violated the standard of care of a reasonably prudent police officer."  Smith v. Dist. of Columbia, 882 A.2d at 788 (quoting Holder v. Dist. of Columbia, 700 A.2d 738, 742 (D.C. 1997)).  Because each cause of action involves an inquiry into the reasonableness of the police officer's actions, these claims often converge in police brutality suits.  Dist. of Columbia v. Chinn,

11

839 A.2d 701, 706-07 (D.C. 2003).

Despite this convergence, a plaintiff may maintain separate negligence and battery claims where there is "at least one distinct element, involving an independent breach of a standard of care beyond that of not using excessive force in making an arrest, which may properly be analyzed and considered by the jury on its own terms apart from the intentional tort of battery and the defense of privilege." Id. at 707.  To survive summary judgment, a negligence claim must constitute a claim separate and distinct from an intentional tort.  A court will look to the substance of the pleadings to determine whether the plaintiff has alleged both a negligence claim and an intentional tort.[4]  See id. at 711.

In Chinn, the plaintiff claimed several police officers

---

[4]  Count 2 of Plaintiff's Amended Complaint alleges, in its entirety:

¶ 30.    Plaintiff Ronald Brooks incorporates as though restated each of the factual allegations stated in all of the preceding paragraphs.

¶ 31.    The Officers used excessive force on Mr. Brooks.

¶ 32.    The Officers' conduct was negligent and in violation of the duty the Officers owed to citizens to exercise due care when interacting with citizens.

¶ 33.    The actions of the Officers described above directly and proximately caused Plaintiff's physical injury, severe emotional distress, pain and suffering, and other injuries as described above.

deliberately inflicted excessive force upon him.  His negligence claim asserted the officers violated the standard of care set out in D.C. Code § 4-176 (1994), providing that "[a]ny officer who uses unnecessary and wanton severity in arresting or imprisoning any person shall be deemed guilty of assault and battery, and, upon conviction, punished therefor."  <u>Id.</u> at 705.  Specifically, he alleged the officers "breached their duty as they were negligent in their excessive use of force."  <u>Id.</u> at 711.  Because Chinn alleged only that the officers deliberately inflicted excessive force upon him, and alleged no separate evidence of negligence, the D.C. Court of Appeals concluded that his negligence claim should not have been submitted to the jury.  <u>Id.</u> at 711.  Both the analysis and outcome in <u>Chinn</u> apply in this case.

To the extent Plaintiff's theory is that the commission of the alleged battery was itself negligent, the cases discussed above preclude a negligence claim.  Such a theory cannot support a separate negligence action.  As the court explained in <u>Chinn</u>, "[i]t is tautological to speak of the applicable standard of care as being the duty not to use excessive force."  <u>Id.</u>

In his Opposition, Plaintiff raises for the first time a claim of negligence based on the failure of the Officers to protect him. Plaintiff argues that "each of the Defendant Officers, separate and apart from physically beating [him], also failed to protect [him]

13

from the savage and unlawful attacks inflicted upon him by the other officers." Pl.'s Opp'n at 7. None of these allegations appears in the Amended Complaint. The allegations included in the negligence count simply are insufficient to plead the claim he now asks the Court to entertain. Even under the liberal pleading requirements of Federal Rule of Civil Procedure 8(a), Plaintiff's belated argument must fail. His pleadings simply did not place Defendants on notice as to the type of negligence claim he was alleging.

Plaintiff has pled that the Officers used excessive force, that their conduct was negligent, and that the actions of the Officers proximately caused his injuries. Am. Compl. ¶¶ 31-33. The only tortious conduct these allegations set forth is battery. As the D.C. Court of Appeals found in Maddox v. Bano, 422 A.2d 763, 764 (D.C. 1980), "[t]he terms, 'carelessly and negligently,' are conclusory assertions, and without more the complaint does not raise a cognizable claim of negligence."[5] Accordingly, Defendants

---

[5] In Maddox, the plaintiff's amended complaint stated:

Defendants ... did take into their physical control and custody in the course of an arrest, the Plaintiff, a private citizen; it was then and there the duty of said Defendants ... that they exercise due care of the person of the Plaintiff in the making of said arrest, notwithstanding which the Defendants, in breach of said duty to the Plaintiff, did carelessly and negligently effect said arrest, and as a proximate cause of said

are entitled to summary judgment on Plaintiff's negligence claim in Count 2.

### C. Summary Judgment Is Granted With Respect to Count 4 Because Respondeat Superior Is Not a Separate Cause of Action

In Count 4, Plaintiff brings a claim of "common law respondeat superior liability" against the District of Columbia.   Defendants argue that respondeat superior is not a separate cause of action. Plaintiff responds that the Officers were acting within the scope of their employment at the time of the tortious acts and, therefore, the District of Columbia was liable for their actions.

Plaintiff is wrong.   It is clearly-established law that respondeat superior is not a separate cause of action.   See Williams v. Dist. of Columbia, 916 F. Supp. 1, 4 n.2 (D.D.C. 1996). Rather, it is a vehicle for holding an employer vicariously liable for torts of the employee. Jones v. Servellon, No. 94-1038, 1996 WL 554513, at *3 (D.D.C. Sept. 18, 1996).   It appears that Plaintiff seeks to hold the District of Columbia liable for the alleged torts of the individual Defendants set out in Counts 1, 2 and 3.   As Defendants point out (Defs.' Mot. at 13), Plaintiff's claim for respondeat superior liability is subsumed in Count 3, and

carelessness and negligence, the Plaintiff did sustain a fracture of the left arm.   422 A.2d at 764.

its inclusion in Count 4 is merely duplicative.  For this reason, summary judgment will be granted for Defendants on Count 4.

### D. Summary Judgment Is Granted on the Section 1983 Claim (Count 6) Because No Reasonable Juror Could Find that the MPD's Custom or Policy Caused the Deprivation of Plaintiff's Rights

In Count 6 of his Amended Complaint, Plaintiff alleges that the District of Columbia violated the Fourth Amendment of the U.S. Constitution by failing to appoint, supervise, monitor, train and/or promote members of the MPD who would enforce the laws in effect in the District.  Defendants argue for summary judgment on this count because "[P]laintiff cannot show that the alleged deprivation of his constitutional rights was caused by policy, custom or practice of the District of Columbia."  Defs.' Mot. at 13.  Specifically, Defendants contend that Plaintiff has failed to present sufficient evidence of an official policy or practice of tolerating the excessive use of force or of deliberate indifference by a District of Columbia policy maker.  Plaintiff responds that he has presented sufficient evidence in his pleadings and expert witness report to create a genuine issue for trial.

To maintain a Section 1983 action against the District of Columbia, Plaintiff must "demonstrate a deprivation of his constitutional rights that was caused by a policy, custom or

practice of the District of Columbia, or a single 'municipal decision [that] reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision.'" <u>McRae v. Olive</u>, 368 F. Supp. 2d 91, 95 (D.D.C. 2005) (<u>quoting</u> <u>Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 403 (1997)). Plaintiff must prove a predicate constitutional violation and show that a custom or policy of the municipality caused the violation. <u>See</u> <u>Baker v. Dist. of Columbia</u>, 326 F.3d 1302, 1306 (D.C. Cir. 2003).[6]

Under <u>Monell v. Dep't of Social Services</u>, 436 U.S. 658, 694 (1978), a city can be held liable under Section 1983 where its own "policy or custom . . . inflicts the injury." A plaintiff must demonstrate that, "through its <u>deliberate</u> conduct, the municipality was the 'moving force' behind the injury alleged." <u>Robinson v. Dist. of Columbia</u>, 403 F. Supp. 2d 39, 52 (D.D.C. 2005) (quoting <u>Brown</u>, 520 U.S. at 404) (emphasis in original). Accordingly, a plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." <u>Id.</u>

It is well settled that the failure to train or supervise city employees can amount to such a policy or custom "when it can be said that the failure amounts to 'deliberate indifference towards

---

[6] Defendants have not moved for summary judgment on Plaintiff's Fourth Amendment claim against the Officers.

the constitutional rights of persons in its domain.'" Daskalea v. Dist. of Columbia, 227 F.3d 433, 441 (D.C. Cir. 2000) (quoting City of Canton v. Harris, 489 U.S. 378, 388-89 (1989)).  A plaintiff bringing a Section 1983 claim based on deliberate indifference must prove: (1) the existence of "practices of state officials ... so permanent and well settled as to constitute 'custom or usage' with the force of law"; (2) "deliberate indifference exhibited by a pattern of inadequate training, supervision and discipline of police officers"; and (3) that the "official custom or policy is actually responsible for the deprivation of constitutional rights." Cox v. Dist. of Columbia, 821 F. Supp. 1, 11 (D.D.C. 1993) (internal citations omitted).

Deliberate indifference is an objective determination, found only where a municipality "'knew or should have known of the risk of constitutional violations,' and yet failed to respond as necessary." Byrd v. Dist. of Columbia, 297 F. Supp. 2d 136, 139 (D.D.C. 2003) (quoting Baker v. Dist. of Columbia, 326 F.3d 1302, 1307 (D.C. Cir. 2003)).  "To prevail, a plaintiff must show more than simple or even heightened negligence; the District's indifference must be conscious, or at least reckless." Id.

To meet that standard, Plaintiff claims that the District of Columbia has a policy or custom of failing to train or discipline its officers properly and that it has been deliberately indifferent

to the shortcomings and failures of its police force, all of which caused the beating and injuries suffered by Plaintiff.  The only evidence he offers to support that claim is the following: (1) the facts of his own case, (2) an agreement between the United States Department of Justice (DOJ) and the District of Columbia regarding the MPD's use of force practices; and (3) the report of his expert witness, Louis A. Mayo, PhD.  Pl.'s Opp'n Ex. 4 ("Mayo Report"). Aside from the facts of his own case, the vast majority of Plaintiff's evidence is either largely inapposite or highly conclusory.  The only actual facts offered by Plaintiff are (1) MPD has not updated its training procedures since 2001, (2) the rate at which officers submit reports of their uses of force is declining, and (3) complaints regarding police behavior are not processed sufficiently quickly.  Analysis of the evidence Plaintiff offers, as discussed below, demonstrates that no reasonable jury could find, by a preponderance of the evidence, that the District of Columbia had any policies or customs exhibiting deliberate indifference or that they caused Plaintiff's injuries.

Plaintiff argues that "the actions surrounding [his attack], the lack of reporting or investigation of this incident, and the promotion of Sergeant Wright," indicate that the District of Columbia has been deliberately indifferent to known problems within the MPD.  Pl.'s Opp'n at 12.  The case law is clear that the facts

of a single case alone are "insufficient to establish the existence of a policy amounting to 'deliberate indifference.'" Robinson, 403 F. Supp. 2d at 54 (citing City of Oklahoma v. Tuttle, 471 U.S. 808, 823-24 (1985)).   A plaintiff must offer additional competent evidence showing such a policy.

It is also clear that Plaintiff cannot offer as evidence of deliberate indifference a pre-existing agreement between the DOJ and the District of Columbia regarding the MPD's use of force practices.   Some background regarding this agreement is necessary to understand Plaintiff's claims.   In January 1999, Mayor Anthony Williams and MPD Chief Charles Ramsey requested that DOJ review the MPD's practices related to police use of force.   In June 2001, after the DOJ had completed its review, the MPD, DOJ, and District of Columbia signed a Memorandum of Agreement ("MOA") setting forth policies and procedures the District of Columbia and MPD would employ regarding police use of force, incident investigation, officer supervision and training, and disciplinary action.[7]   The MOA requires the MPD to provide quarterly reports of its endeavors to the DOJ and to an Independent Monitor ("IM").   As of January 2006, the IM had issued fifteen reports.

To the extent Plaintiff relies on the MOA itself as evidence

---

[7] For further discussion of the MOA, see generally Robinson, 403 F. Supp. 2d at 55; Byrd, 297 F. Supp. 2d at 140.

of deliberate indifference, his argument has been squarely rejected.   The MOA shows the District of Columbia was <u>not</u> deliberately indifferent to problems with the MPD; quite to the contrary, it was taking affirmative steps to remedy the situation. <u>See</u> <u>Robinson</u>, 403 F. Supp. 2d at 55 ("[T]he MOA conclusively demonstrates that the District was not indifferent to the problems with the MPD....   Indeed, the DOJ itself commended the District's 'unprecedented request' for the DOJ's investigation and recommendations....   The DOJ further applauded the multiple reforms implemented by the District and MPD well in advance of the July 2001 effective date for the MOA."); <u>Hundley v. Dist. of Columbia</u>, 02-638, slip. op. at 9-10 (D.D.C. Oct. 19, 2004); <u>Byrd</u>, 297 F. Supp. 2d at 140-41.[8]

It may be fair to infer, as Plaintiff suggests, <u>see</u> Pl.'s Opp'n at 13, that the DOJ's finding of a pattern or practice of excessive force put the District of Columbia on notice that intervention was required to remedy the MPD's deficiencies.   <u>See</u>

---

[8] Plaintiff's expert states that the fact "[t]hat Chief Ramsey recognized these problems and sought the assistance of the US Justice Department to correct these problems does not negate the the [sic] fact that the proposed corrective actions in training, supervision and accountability remain significantly deficient." Mayo Report at 30.   While it is true that the existence of the MOA cannot shield the District of Columbia from all claims of deliberate indifference, neither does it constitute evidence of such indifference at the time of the incident in this case.

Robinson, 403 F. Supp. 2d at 55.   As the court concluded in Robinson, however, "a mere awareness of a problem in January 1999 and a need for improvement is not, as a matter of law, sufficient to impose municipal liability for an incident that occurred in October 2000."   Id. at 55.   The same reasoning certainly applies with even greater force to an incident that occurred four years after the incident in Robinson.

Plaintiff also relies on the report of his expert witness, Dr. Louis A. Mayo.[9]   Dr. Mayo's report purports to conclude that the District of Columbia acted with deliberate indifference in failing to adequately train, supervise and discipline its police force. Mayo Report at 7.   His 31-page report contains an abundance of conclusory statements with little substantive evidence.[10]

_____

[9] Defendants argue that because the Mayo Report does not meet the requirements of Fed. R. Civ. P. 26, it should be excluded from evidence.   For this reason, they contend, Plaintiff does not have expert testimony to support his arguments regarding standard of care in this case.   This Court addressed and rejected that argument in its June 16, 2006 denial of Defendants' motion to exclude the report of Plaintiff's expert.

[10] Dr. Mayo's report devotes over five pages to a list of documents he has reviewed, many of which are irrelevant to the issues in this case, over three pages to a discussion of different versions of the facts with no clear purpose, four pages to a very one-sided presentation of statements contained in the MOA, and numerous pages quoting from statutes and cases that he fails to connect in any way to the District of Columbia or its actions or inactions.   Notably, amid this abundance of unhelpful information, the Mayo Report contains no disclosure as to Dr. Mayo's credentials or professional experience.

The first three-fourths of Dr. Mayo's report contains a large amount of information that is either irrelevant to this case, or is in no way tied to his conclusions regarding deliberate indifference.  Dr. Mayo does not set forth his opinions regarding deliberate indifference until page twenty-seven of his report, and then devotes only 1.5 pages to a discussion of the MPD's allegedly problematic "policies and practices."[11]  The only evidence contained in these 1.5 pages tending to show the existence of an official policy or custom of deliberate indifference consists of the following: an assertion that training materials have not been updated since 2001, a decline in the rate at which officers are submitting reports documenting their uses of force, and a decline in the speed with which complaints are being processed.

Dr. Mayo states that "[m]ost relevant training materials were dated in the 1980's and 1990's, and particularly not updated in accordance with the Memorandum of Agreement dated 2001."  Id. at

---

[11] Dr. Mayo first lists a series of acts of the individual Officers in this case.  Elsewhere in his report, Dr. Mayo states that the District of Columbia and MPD "conducted none of the required investigations ... and there was no discipline or other corrective action regarding the extensive violations by the defendant officers ...."  Mayo Report at 27. He further emphasizes that one of the Officers, Defendant Wright, was later promoted to Lieutenant.  Id.  These actions do not demonstrate an official policy or custom of the District of Columbia.  As stated above, the facts of a single incident are not enough to show an official policy or custom.

28.  He offers no analysis of the content of the training materials he concludes are outdated, however, and no evidence that any particular training deficiency exists or is related to the facts of this case.

In support of the alleged reporting and complaint processing deficiencies, the Mayo Report relies heavily upon a quarterly report by the IM covering the first quarter of 2004.  That IM report indicated "a precipitous decline" in the regularity with which police officers submitted reports documenting uses of force. Id. at 25.  The IM also found that half of the investigations conducted by the MPD citizen complaint office were not "complete." Id.  Based on what appears to be his own review of claims involving false arrest or assault since October 1, 2005, Dr. Mayo further reports that 57 cases were open for more than three months with "most" open for more than one year.  Id. at 28-29.  According to Dr. Mayo, the failure to close these cases indicates that "the involved officers are still working and have not received any corrective action where they were at fault."  Id. at 29.[12]  However,

_____

[12] Dr. Mayo also opines that the MPD's policies for review and analysis of officer conduct were inadequate.  To support that opinion, Dr. Mayo states that "for incidents involving a sergeant, the sergeant is not the 'supervisor' – a higher authority is required.  Otherwise you have the 'fox guarding the chicken coop.'" Id. at 27-28.  He seems to suggest that the level of accountability in the complaint investigation process is inadequate.  While such a concern may be relevant to a deliberate indifference claim, the

the declining rate with which officers submit reports and the declining speed with which complaints are processed, in and of themselves, cannot demonstrate the high standard of indifference necessary to hold a municipality culpable, which, under Byrd, is recklessness.  297 F. Supp. 2d at 139.

In short, Plaintiff's evidence of deliberate indifference falls far short in comparison with those cases in this Circuit that have denied summary judgment and allowed the Section 1983 claim to be decided by a jury.  Indeed, the courts in this Circuit have either granted summary judgment or directed verdicts on more substantial showings than Plaintiff has made in this case.  See Carter v. Dist. of Columbia, 795 F.2d 116 (D.C. Cir. 1986);[13]

_____

Mayo Report provides no actual evidence tending to show how that process functions or how it is problematic.  His assertion that the MPD does not apply appropriate corrective measures suffers from a similar lack of competent evidentiary support.  See id. at 28.

[13]  In Carter, our Court of Appeals affirmed the district court's directed verdict for the District of Columbia on the Section 1983 claim in the face of the following evidence: (1) the testimony of a witness that police had beat him; (2) the death of a prisoner in police custody, caused by a police choke-hold; (3) the death of seven people over a two-month period; (4) a fine imposed on an officer for striking a person without cause; (5) the reprimand of an officer for looping a belt around the neck of a prisoner and taunting him; (6) the police chief's admission that an officer had kicked a handcuffed suspect.  Further, the plaintiffs in that case presented statistical evidence showing, inter alia, that over a five year period police officers were exonerated in 92% of misconduct investigations, the police chief took adverse action against only one of 26 officers found to have used unjustifiable force, and the police chief took adverse action against only five

<u>Hundley</u>, 02-638, slip. op. at 5-12.

Accordingly, the District of Columbia is entitled to summary judgment on Plaintiff's Count 6 Section 1983 claim.

**E.    Summary Judgment Is Granted on the Respondeat Superior Claim Pursuant to 42 U.S.C. § 1983 (Count 7) Because Defendants' Motion Is Deemed Conceded**

Defendants argue that the District of Columbia cannot be held liable under Section 1983 based on a <u>respondeat</u> <u>superior</u> theory, and urge this Court to grant summary judgment as to Count 7. Plaintiff's Opposition does not address this argument. Because Plaintiff is deemed to have conceded the Motion as to Count 7, summary judgment must be entered in Defendants' favor. LCvR 7(b); <u>see</u> <u>United States v. Real Property Identified As: Parcel 03179-005R</u>, 287 F. Supp. 2d 45, 61 (D.D.C. 2003) ("If the opposing party files a responsive memorandum, but fails to address certain arguments made by the moving party, the court may treat those arguments as conceded.") (internal citation omitted). Moreover, it is well-settled that a municipality cannot be held liable under a <u>respondeat</u> <u>superior</u> theory in a Section 1983 suit.   <u>Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown</u>, 520 U.S. at 403.

Accordingly, Defendants are entitled to summary judgment on

---

of the 21 cases the Civilian Complaint Review Board recommended for such action.   795 F.2d at 123-24.

Count 7.

**IV.   CONCLUSION**

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment is **granted in part** and **denied in part**.  An Order will issue with this Opinion.

                                    /s/
11/20/06                            Gladys Kessler
                                    United States District Judge

**<u>Copies to</u>: attorneys on record via ECF**